STATE OF CONNECTICUT *v.* GLENN STEWART
(AC 18813)

Foti, Spear and Dupont, Js.

Argued June 1—officially released October 10, 2000

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Steven G. Weiss*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Glenn Stewart, appeals from the judgment of conviction, rendered after a jury

trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1)[1] and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a).[2] The defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal because the evidence was insufficient to convict him of either charge, (2) failed to instruct the jury, as required by statute, that it could draw no unfavorable inference from his failure to testify, (3) precluded evidence that the child victim died because she and her safety seat were not properly secured and (4) failed to instruct the jury adequately on the essential elements of causation. We agree with the defendant that the court improperly failed to instruct the jury that no unfavorable inference could be drawn from his failure to testify. We reverse the judgment of the trial court for that reason.

The jury reasonably could have found the following facts. In April, 1996, Ioanna Schmidt and her four month old daughter, Arianna, resided in Ossing, New York.

---

[1] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[2] General Statutes § 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

Schmidt's mother, who resided approximately ten minutes away from Schmidt's place of employment in Stamford, took care of Arianna while Schmidt was at work. On April 8, 1996, Schmidt went to her mother's house to pick up Arianna after work. Schmidt was driving a Toyota Corolla. Arianna was buckled into her seat in the back of the vehicle, and they began their trip home.

The weather that evening was a wintry mixture of snow and rain. Lori Bonante, who resided in New York and worked in Stamford, also was driving home in the southbound lane of Interstate 95 at approximately the same time as Schmidt. Bonante was operating a 1996 black Jeep Grand Cherokee in the right lane of the highway and was traveling at approximately fifty miles per hour.

Approximately two miles before exit two, Bonante noticed a large tractor trailer approaching from behind. The truck closed to within inches of her vehicle so that all Bonante could see in her rearview mirror was the grille of the truck. The truck, operated by the defendant, maintained a distance of only a few inches from the rear of Bonante's vehicle for a distance of about one mile. The defendant's truck was so close to the rear of Bonante's Jeep that as Schmidt drove past them in the center lane she thought that the Jeep was towing the truck. After Schmidt passed the defendant's truck, the defendant moved from behind the Jeep into the center lane. Once the defendant moved to the center lane, Bonante slowed so that Schmidt could get out of the defendant's way and move into the right lane. Schmidt began moving from the center lane to the right lane when the defendant accelerated his truck and struck the left rear portion of Schmidt's vehicle. At that point, Schmidt's vehicle was at least three-quarters of the way into the right lane. When the defendant's truck struck the left rear of the Toyota, Schmidt heard a loud bump,

and Bonante heard the crunch and cracking of the Toyota's taillight. The impact from the truck caused Schmidt's vehicle to careen across the right lane, to enter a grassy area and to collide with a tree. Arianna was ejected from the Toyota as it hit the tree. The defendant pulled the truck over to the left lane, stopped and walked back to look at the scene of the accident. After a short time, he went back to his truck and drove away without speaking to anyone at the scene. Arianna died approximately six weeks later on May 22, 1996.

Approximately ten months later, the state police were able to determine that the truck involved in the accident was registered to the McDonald Sullivan Company of Long Island, New York. The police later determined that the defendant was operating the truck when it struck the rear of the Schmidt vehicle. The defendant was arrested on February 23, 1997, and after being advised of his *Miranda* rights[3] agreed to talk with state police Trooper Michael DeCesare. The defendant initially stated that he could not remember if he was driving on the date in question. When asked about the accident, he responded that he had been told about it, but had not read anything about it in newspapers or heard about it in any news reports. When confronted with the evidence demonstrating that he was the driver of the truck, the defendant admitted being there and that he must have been driving on that date.

I

The defendant first claims that the evidence was insufficient as to each of the charges and that he was entitled to a directed verdict of not guilty as to both of them. We find no merit to this claim.

Our standard of review for a sufficiency of the evidence claim is well established. "In reviewing a suffi-

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ciency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reason-

able view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 239–40, 745 A.2d 800 (2000).

## A

The defendant claims that the evidence was insufficient on the manslaughter charge because the state failed to prove that his conduct was reckless. General Statutes § 53a-3 (13) provides in relevant part that a person acts recklessly when such person is "aware of and consciously disregards a substantial and unjustifiable risk . . . ." The gist of the defendant's argument is that the state proved no more than that he was following the Bonante and Schmidt vehicles too closely. There was evidence that fifty miles per hour, the speed that the defendant was traveling, was not excessive under the weather and road conditions. He asserts that at best, the evidence showed simple negligence.

The state was required to prove that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that death would result from his conduct. The defendant's state of mind can be proven by circumstantial evidence and proper inferences from such evidence. See *State* v. *Salz*, 226 Conn. 20, 32–33, 627 A.2d 862 (1993). The jury reasonably could have inferred from the evidence and from the defendant's conduct that he knew that driving his tractor trailer truck inches behind a small car at highway speed in bad weather could result in a collision and the risk of a resulting death. Nevertheless, he proceeded to tailgate the Bonante vehicle until he moved into the center lane and struck the Schmidt vehicle, sending it out of control. The defendant's conduct reasonably could be considered a gross deviation from the conduct of a reasonable

person in such a situation, and the evidence was, therefore, sufficient to sustain the conviction.

## B

The defendant's assertion that the evidence was insufficient on the charge of evasion of responsibility in the operation of a motor vehicle is equally unavailing. He claims that the state did not prove beyond a reasonable doubt that he was knowingly involved[4] in an accident. We disagree.

The evidence that the defendant heard a "thud" at the same time that his truck struck the Schmidt car, the defendant's stopping and perusing the accident scene and his initial reluctance to concede that he was even at the scene of the accident, as well as all the other evidence, was ample to support the inference that the defendant was knowingly involved in the accident. This claim is completely without merit.

## II

The defendant next claims that the court failed to instruct the jury that pursuant to General Statutes § 54-84,[5] it could not draw any unfavorable inference from the defendant's failure to testify. We agree.

---

[4] Pursuant to § 14-224, the state is required to prove the following elements: (1) the defendant operated a motor vehicle; (2) the defendant was knowingly involved in an accident; (3) the accident caused serious physical injury or death to a person other than the defendant; and (4) the defendant failed to stop and render assistance, and to provide the specified information to the injured person, a witness to the accident or a police officer. See footnote 2.

[5] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

We first note that the state attempted to rectify the record to reflect what it claimed was the defendant's in-chambers request that the court not give the no unfavorable inference instruction. There is no record of such a conference, and the record before us contains no such request by the defendant.

This claim is governed by our decision in *State* v. *Suplicki*, 33 Conn. App. 126, 634 A.2d 1179 (1993), cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994). Here, as in *Suplicki*, the defendant raises this claim for the first time on appeal and seeks review under the plain error doctrine; Practice Book § 60-5; and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We held in *Suplicki* that "the total omission of the 'no adverse inference' instruction is plain error that is not subject to a harmless error analysis. The unconditional language of the statute is a legislative mandate and the failure to use that language is a pivotal aspect of the defendant's privilege against self-incrimination. The statutory language is based on a constitutional right, and its omission can never be harmless." *State* v. *Suplicki*, supra, 130.

The state claims that there was no "total omission" of the no unfavorable inference instruction under the circumstances of this case. The state relies on the fact that the court told the two venire panels from which the jury subsequently was drawn that the jury could not draw any unfavorable inference in the event that the defendant chose not to testify. We reject this claim for several reasons.

First, § 54-84 is set in the context of the *trial*. "The trial of a jury case commences when a jury panel is selected and sworn; see *State* v. *Roy*, 182 Conn. 382, 385, 438 A.2d 128 (1980) . . . ." (Citation omitted.) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, 6 Conn. App. 60, 70, 504 A.2d 1376, cert denied, 199 Conn. 808,

508 A.2d 769 (1986). The statute obviously refers to the jury instructions that are to be given at the end of the trial. Second, the statute directs the court to instruct the *jury*. The pool of venirepersons from which the jury is drawn is not the trial jury. Third, prior to the trial, the court does not know whether the defendant will testify. Finally, the preliminary instructions were given at least two weeks prior to the jury instructions at the end of the evidence. As a practical matter, the legislature could have not have intended that such instructions would comply with the dictates of § 54-84. We conclude that *Suplicki* governs and requires a reversal of the judgment of conviction.

Because the defendant's evidentiary claims and his claim that the court improperly instructed the jury on the causation element of the manslaughter charge undoubtedly will arise in a new trial, we will address those issues.

### III

The defendant claims that the court improperly excluded testimony from two state police troopers who would have testified that the child victim was ejected from the vehicle and died because she was not properly secured in the child safety seat and that the safety seat itself was not properly secured in the Schmidt vehicle.[6] We conclude that the court properly ruled that such evidence was irrelevant.

---

[6] The defendant couches his claim as one in which the court denied him his constitutional rights to present evidence in his defense on the issue of causation and to have the jury determine if the state negated his defense with proof beyond a reasonable doubt. "A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 668, 735 A.2d 267 (1999). This attempt to transform this evidentiary claim into one of constitutional dimension clearly is without merit.

The state cites a number of cases from around the country that support the proposition that evidence that a victim in an automobile collision was not properly restrained in the vehicle would not relieve the defendant of criminal responsibility because such failure to restrain would not constitute an intervening, superseding cause of the victim's death or injury. See *People* v. *Wattier*, 51 Cal. App. 4th 948, 953–55, 59 Cal. Rptr. 2d 483 (1996) (trial court properly excluded evidence that victim was not wearing proper restraints at time of collision; such evidence would not constitute superseding cause absolving defendant of criminal liability for reckless conduct); *Union* v. *State*, 642 So. 2d 91, 93–94 (Fla. App. 1994) (trial court properly granted state's motion in limine preventing defendant from introducing evidence that victims may have survived had they been wearing proper restraints; failure to wear such restraints not sole proximate cause of accident that resulted in their deaths); *State* v. *Hubka*, 480 N.W.2d 867, 868–70 (Iowa 1992) (trial court properly granted state's motion in limine precluding evidence that child victims were not wearing proper restraints at time of car crash; failure of children to wear such restraints would not constitute superseding cause of death so as to preclude imposition of criminal responsibility on defendant); *People* v. *Clark*, 171 Mich. App. 656, 658–61, 431 N.W.2d 88 (1988) (evidence that victim not wearing proper restraints irrelevant, inadmissible; failure to wear such restraints not so substantial an act by victim as to constitute intervening cause that would absolve defendant of criminal liability); see also *Panther* v. *State*, 780 P.2d 386, 395 (Alaska Ct. App. 1989); *State* v. *Freeland*, 176 Ariz. 544, 547–48, 863 P.2d 263 (Ariz. Ct. App. 1993); *Whitener* v. *State*, 201 Ga. App. 309, 311, 410 S.E.2d 796, cert. denied, 201 Ga. App. 905 (1991); *Green* v. *State*, 650 N.E.2d 307, 310 (Ind. App. 1995); *State* v. *Lund*, 474 N.W.2d 169, 173–74 (Minn. App.

1991); *State* v. *Radziwil*, 235 N.J. Super. 557, 570, 563 A.2d 856 (App. Div. 1989), aff'd, 121 N.J. 527, 582 A.2d 1003 (1990); *State* v. *Mitchell*, 67 Ohio App. 3d 123, 126–27, 586 N.E.2d 196 (1990); *State* v. *Dodge*, 152 Vt. 503, 505–506, 567 A.2d 1143 (1989); *State* v. *Hursh*, 77 Wash. App. 242, 244–45, 890 P.2d 1066, rev. denied, 126 Wash. 1025, 896 P.2d 64 (1995); *State* v. *Nester*, 175 W. Va. 539, 542, 336 S.E.2d 187 (1985); *State* v. *Turk*, 154 Wis. 2d 294, 295–97, 453 N.W.2d 163 (Wis. Ct. App. 1990).

Our Supreme Court has aligned Connecticut with those other jurisdictions on this issue. In *State* v. *Munoz*, 233 Conn. 106, 124–26, 659 A.2d 683 (1995), the court stated with reference to the doctrine of intervening cause that it "serves as a dividing line between two closely related factual situations: (1) where two or more acts or forces, one of which was set in motion by the defendant, combine to cause the victim's injuries, in which case the doctrine will not relieve the defendant of criminal responsibility; and (2) where an act or force intervenes in such a way as to relieve a defendant, whose conduct contributed in fact to the victim's injuries, from responsibility, in which case the doctrine will apply. . . . Every person is held to be responsible for the natural consequences of his acts, and if he commits a felonious act and death follows, it does not alter its nature or diminish its criminality to prove that other causes co-operated to produce that result." (Citations omitted; internal quotation marks omitted.)

This case clearly falls under the first category where two acts could have combined to cause the death. If the child's seat belt was not properly fastened and the seat itself was not properly secured in the car, such circumstances may have combined with the defendant's act to cause the victim's death. As the court pointed out in *Munoz*, an independent, intervening force must do "more than supply a concurring or contributing cause of the injury." Id., 124. It must be "unforeseeable

and sufficiently powerful in its effect [such] that it serves to relieve the defendant of criminal responsibility for his conduct." Id. Because the evidence was irrelevant, it properly was excluded by the court.

## IV

The defendant claims that the court's instructions to the jury on the essential elements of causation for the manslaughter count were inadequate. He claims that the court should have expanded its instructions to include "(1) an indication that the defendant's conduct must contribute substantially and materially, in a direct manner, to the victim's injuries; and (2) an indication that the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced the injuries." We disagree.

For the reasons discussed in part III of this opinion, this claim is without merit. The defendant offered no relevant evidence of an efficient, intervening cause and, therefore, no additional instruction was necessary.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.