ANIMAL RIGHTS FRONT *v.* ARTHUR J. ROCQUE, JR., COMMISSIONER OF ENVIRONMENTAL PROTECTION
(AC 20924)

Schaller, Spear and Peters, Js.

Argued March 1—officially released May 1, 2001

*Derek V. Oatis*, for the appellant (plaintiff).

*Eliot D. Prescott*, assistant attorney general, with whom were *Patricia A. Horgan*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Kimberly P. Massicotte*, assistant attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. This case concerns a controlled deer hunt at the Bluff Point Coastal Reserve in Groton. The hunt was authorized by the department of environmental protection (department). The dispositive issue is whether to define the term "fawn deer," as used in General Statutes § 26-86f,[1] as a deer with a spotted coat

---

[1] General Statutes § 26-86f provides: "No person shall hunt, wound, kill or remove from the wild any fawn deer at any time, except that such deer found wounded or injured may, with due care, be removed from the wild for the purpose of having the wounds or injuries treated, and all such deer shall, within twenty-four hours after such removal, be turned over to a

or as a deer that is less than one year old. The trial court accepted the former definition to enable the statute to comply with constitutional norms of due process and notice. The plaintiff, Animal Rights Front,[2] urges the adoption of the latter definition in the interest of protecting animal rights. We agree with the court.

The plaintiff brought an action for declaratory and injunctive relief against the defendant, Arthur J. Rocque, Jr., commissioner of environmental protection, to obtain the proper interpretation of fawn deer under § 26-86f. Invoking the Connecticut Environmental Protection Act (CEPA),[3] General Statutes § 22a-14 et seq., the plaintiff asked the court to enjoin the defendant from permitting or conducting a controlled hunt involving deer, spotted or not, that are less than one year old.[4] In response to cross motions for summary judgment, the court defined the term "fawn deer" as a deer with a spotted coat and rendered judgment in favor of the defendant.

Summary judgment was the appropriate procedural mechanism for resolving the dispute between the parties because they stipulated to all the relevant facts. In January, 1996, the department implemented a controlled hunt to reduce the deer population at Bluff Point. There were 233 deer removed from Bluff Point, of which fifty-four were classified as fawn deer.

representative of the Department of Environmental Protection for such disposition as shall be determined by the commissioner."

[2] The Animal Rights Front is a public interest and animal protection organization.

[3] CEPA provides, inter alia, the authority to bring an action to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction. General Statutes § 22a-16.

[4] As the court found, "[t]he parties agree that the term fawn deer has not been construed by our courts and is not defined within the language of § 26-86f."

Section 26-86f prohibits the killing or removal from the wild of fawn deer. See footnote 1. The department's biological data refer to a "fawn deer" as a deer that is less than one year old. For at least thirty years, however, the department has distinguished a fawn deer from an adult deer on the basis of the fawn's having a spotted coat. In an affidavit accompanying the defendant's motion for summary judgment, the department's deer biologist opined that the term fawn deer as used in § 26-86f refers to a young deer with a spotted coat because the average hunter will find it difficult or impossible to ascertain, in any other fashion, the age of fawns in the wild. In its memorandum of decision, the court stated: "Most fawns are born between May 15 and June 30, and they lose their spots in late August or early September."[5] Thereafter, the distinction between fawn deer and yearlings can be ascertained only by examining the deer's teeth.[6] The plaintiff does not take issue with the department's description of fawn deer.

In rendering summary judgment in favor of the defendant, the court decided that, as a matter of law, the department's construction of § 26-86f was proper. The court reasoned that if it "were to find that § 26-86f applied to all deer less than one year of age, regardless of whether the deer had spots, people taking deer without spots would have no reliable way to know if they were complying with the statute [which is penal in

---

[5] The court further stated: "They become functional ruminants . . . by two months of age and are weaned at two to four months of age; once weaned they are no longer dependent on their mothers. They are sexually mature and capable of breeding at six to seven months; gestation is approximately seven months."

[6] The parties stipulated that it is impossible to distinguish between a ten month old deer and a thirteen month old deer in the wild. Many deer at seven or eight months of age are the same size, are the same color and have the same habits as an adult deer. Distinguishing between many deer at seven or eight months of age and an adult deer by visible observation is not reliable. Furthermore, most deer do not have antlers.

nature,] prior to taking the deer. . . . Thus, construing fawn deer under § 26-86f to mean a deer less than one year of age would not comport with the requirements of due process of law."

On appeal, the plaintiff argues that the legislative history of § 26-86f demonstrates that the court should have construed the term "fawn deer" to mean a deer that is less than one year old. We disagree.

Our discussion of § 26-86f is guided by familiar principles. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 681, 735 A.2d 267 (1999). Furthermore, when "construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Ciarelli* v. *Commercial Union Ins. Cos.*, 234 Conn. 807, 812, 663 A.2d 377 (1995).

In the absence of a legislative definition of the term "fawn deer" in § 26-86f, the plaintiff maintains that we are bound by the legislative history of the statute. It contends that this history demonstrated that the term "fawn deer" must be defined as a deer that is less than one year old.

The only language evidencing the legislative intent is the following: "Presently there are no restrictions to killing fawn deer and I know a few instances where they say they are very tender and it seems a shame to kill a fawn deer. *The average reproduction . . . rate of deer is about one and a half deer per doe and these animals should be allowed to grow, particularly the*

*females, to maturity so they can perpetuate the deer herd.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Fish and Game, 1963 Sess., p. 37, remarks of Representative Guido LaGrotta. The plaintiff maintains that this statutory expression of policy reflects the legislature's understanding that a deer does not reach its sexual maturity until seven or eight months of age, a time that is three or four months subsequent to the deer's shedding of its spotted coat. As previously noted, however, the plaintiff accepts the department's assertion that only examination of a young deer's teeth will enable a hunter to ascertain whether a deer is a yearling. Nonetheless, the plaintiff argues that the emphasized sentence makes it clear that the intent of the legislature was to define the term "fawn deer" as a deer that is not yet one year old, not as a deer with a spotted coat.[7] We are not persuaded.

Both parties agree that § 26-86f is a penal statute with penal consequences. Penal "statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." *State* v. *McGann*, 199 Conn. 163, 177, 506 A.2d 109 (1986). "A penal statute must be construed strictly against the state and liberally in favor of the accused." *State* v. *Torres*, 206 Conn. 346, 355, 538 A.2d 185 (1988). Furthermore, "a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid." *State* v. *Pickering*, 180 Conn. 54, 59–60, 428 A.2d 322 (1980). "Due process requires that a statute afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." (Internal quotation marks omitted.) *Keogh* v. *Bridgeport*, 187 Conn. 53, 60, 444 A.2d 225 (1982).

As did the trial court, we eschew any construction of a statute that would place it in constitutional jeopardy.

---

[7] The plaintiff argues that the clear intent is further illuminated by the fact that there is no reference in the legislative history to spotted coat deer.

*State* v. *Metz*, 230 Conn. 400, 422–23, 645 A.2d 965 (1994); *Sassone* v. *Lepore*, 226 Conn. 773, 785, 629 A.2d 357 (1993); see *Kron* v. *Thelen*, 178 Conn. 189, 197, 423 A.2d 857 (1979). Under the plaintiff's definition of the term "fawn deer," no reasonably intelligent person would be able to ascertain what conduct the statute permits and what conduct it subjects to penal sanction. Principles of due process and fair notice do not permit such a construction of the statute.[8] If a literal reading of a statute would place it in constitutional jeopardy, "this court will go beyond the face of the statute to determine whether it may be construed so as to achieve its purpose in a manner which is both effective and constitutional." (Internal quotation marks omitted.) *Castagno* v. *Wholean*, 239 Conn. 336, 340, 684 A.2d 1181 (1996).

The plaintiff responds to this constitutional argument in two ways. First, the plaintiff claims that the defendant could have adopted regulations modifying the hunt or the hunting season. This response is unpersuasive because the plaintiff has provided no authority for the proposition that the defendant may or must promulgate such regulations. Second, the plaintiff maintains that the defendant could have conducted a regulated hunt that limited participation only to trained professionals. This response also cannot be sustained in light of the court's findings that it is impossible for *anyone* to distinguish between a ten month old and a thirteen month old deer without an examination of the teeth of the deer.

It is familiar learning that the interpretation of a statute not only must pass constitutional muster, but also must be consistent with clear legislative intent. *Kulig* v. *Crown Supermarket*, 250 Conn. 603, 607–608, 738

---

[8] The parties have not sought to distinguish between the due process clauses of the United States constitution and the Connecticut constitution. We presume, therefore, that the United States constitution governs our consideration of the requirements of due process and fair notice.

A.2d 613 (1999). In light of all of the relevant interpretative factors, we conclude that the intent of the legislature is not thwarted by defining the term "fawn deer" in § 26-86f in the manner proposed by the defendant. A reasonable, as well as constitutional, interpretation of the legislative intent is that the General Assembly intended to allow a deer to grow to an age at which it could fend for itself, no longer being dependent on its mother in the wild,[9] to give it the opportunity to grow to an age at which it may breed[10] and, thus, to perpetuate the herd. This legislative intent is not inconsistent with limiting the statute's penal provision to conduct that is ascertainably forbidden.

For the reasons discussed, we conclude that the court properly construed the term "fawn deer" in § 26-86f. That term applies only to a deer that retains a spotted coat.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Deer are weaned at two to four months of age and once weaned they are no longer dependent on their mothers.

[10] After shedding their spotted coat, deer become sexually mature just a few months later.