STATE OF CONNECTICUT *v.* GLENN STEWART
(AC 18813)

Foti, Spear and Dupont, Js.

Argued May 1—officially released July 17, 2001

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Steven G. Weiss*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. This case returns to the Appellate Court on remand from our Supreme Court. *State* v. *Stewart*, 255 Conn. 913, 763 A.2d 1039 (2000). The defendant, Glenn Stewart, originally appealed to this court from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1)[1] and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a).[2]

---

[1] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[2] General Statutes § 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or any inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

In his original appeal to this court, the defendant asserted that the trial court improperly (1) denied his motion for a judgment of acquittal because the evidence was insufficient to convict him of either charge, (2) failed to instruct the jury, as required by statute,[3] that it could draw no unfavorable inferences from his failure to testify, (3) precluded evidence that the child victim died because she and her safety seat were not properly secured, and (4) failed to instruct the jury adequately on the essential element of causation. We resolved issues one, three and four against the defendant, and resolved issue two in the defendant's favor, thereby reversing the judgment of conviction and remanding the case for a new trial. *State* v. *Stewart*, 60 Conn. App. 301, 759 A.2d 142, remanded, 255 Conn. 913, 763 A.2d 1039 (2000).

After the defendant filed his brief in the original appeal to this court, the state filed a motion for permission to file a late motion for articulation or rectification. The state sought an articulation from the trial court as to whether, during a charging conference held in chambers, the defendant's trial attorney had requested that the court omit from its charge the "no unfavorable inferences" instruction at issue in the appeal. On February 9, 2000, we denied the state's motion.

On October 10, 2000, we officially released our decision on the defendant's appeal. We held, with respect to the issue concerning the omission of the "no unfavor-

[3] The defendant's claim in his original appeal, and the subject of this appeal, is based on General Statutes § 54-84, which provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

able inferences" instruction, that there was no record of any conference at which the defendant's attorney requested that the court omit the instruction from its charge and that the court's failure to so charge constituted plain error. Id., 309. We relied on our decision in *State* v. *Suplicki*, 33 Conn. App. 126, 634 A.2d 1179 (1993), cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994).

On December 5, 2000, our Supreme Court granted the state's petition for certification limited to the following issues: "1. Did the Appellate Court properly conclude that, under the facts of this case, the trial court's failure to give a 'no unfavorable inferences' instruction was plain error requiring reversal of the conviction? 2. Is the failure to include such an instruction subject to harmless error analysis?" *State* v. *Stewart*, 255 Conn. 913, 763 A.2d 1039 (2000). Our Supreme Court also "ordered that the trial court articulate the facts concerning discussions, if any, among the state's attorney, defense counsel and the court during a charging conference, relative to the court's giving a 'no unfavorable inferences' instruction to the jury in this matter." Id.

On December 14, 2000, the trial court filed its articulation.[4] On January 25, 2001, after receiving the trial

---

[4] The court explained in its articulation that at the end of the first day of evidence, the court requested that both parties provide it with preliminary requests to charge no later than April 16, 1998. Both parties complied with the court's request. After the conclusion of evidence, on April 17, 1998, the court conducted an in-chambers preliminary charging conference with counsel for both the state and the defendant.

The court reviewed the preliminary requests to charge during the conference. The "defendant's counsel made a specific request that the court omit any reference to the defendant's failure to testify. The court reminded counsel of its obligation under [General Statutes §] 54-84 (b). The court further advised that [the] 'no unfavorable inferences' instruction was part of the court's base charge. . . .

"Nonetheless, defendant's counsel persisted in asking the court not to comment on his client's failure to testify. In doing so, counsel stressed the word 'highlight' in using the phrase, 'I don't want to highlight his failure to testify.'"

court's articulation, our Supreme Court remanded the matter to this court "for reconsideration of whether the failure to give the instruction, under the circumstances of this case, was plain error requiring the reversal of the conviction." Id. We answer that question in the negative and, accordingly, affirm the judgment of the trial court.

The defendant argues that the court committed plain, reversible error by omitting the "no unfavorable inferences" instruction from its jury charge.[5] He asserts that the instruction implicated his fundamental right not to testify, which only he could exercise. As such, he argues, it necessarily follows that "the accused must personally waive his statutory right to the protections of General Statutes § 54-84 (b)." The defendant urges us to accept his interpretation of the statute, arguing that it "requires the court to ask the accused personally whether he or she desires to waive the otherwise mandatory [instruction]." The defendant argues that because the court never conducted that inquiry, it committed plain error.

The relevant facts underlying the defendant's conviction, as the jury reasonably could have found them,

---

The court further explained that it noted the request of the defendant's counsel on the court's copy of the defendant's request to charge. The court appended a copy of that notation on the charge to its articulation.

On April 20, 1998, the court continued its charging conference with counsel in chambers. After disclosing to counsel the substance of its charge, the court once again inquired of the defendant's counsel whether he still wanted the court to omit the mandatory "no unfavorable inferences" charge. "Defendant's counsel reiterated that he did not wish the court to 'highlight' his client's failure to take the stand and requested the charge not be given." The court added a second notation to that effect on its copy of the charge.

After the court delivered its charge to the jury, the defendant's counsel did not take exception to the court's failure to instruct the jury in accordance with General Statutes § 54-84 (b).

[5] On February 21, 2001, we granted the defendant's motion to permit the parties to simultaneously file supplemental briefs to this court concerning this issue.

were set out in this court's first opinion in this matter. *State* v. *Stewart*, supra, 60 Conn. App. 301. A summary of those facts will suffice here. On April 8, 1996, Ioanna Schmidt and her four month old daughter, Arianna, were traveling on the southbound lane of Interstate 95 in Stamford. The weather conditions that evening were a wintry mix of snow and rain. Schmidt was driving a Toyota Corolla, and her daughter was buckled into her seat in the back of the vehicle. Lori Bonante was also traveling in the southbound lane at the same time as Schmidt.

Near exit two, Bonante, traveling in the right lane, noticed a large tractor trailer approach her from behind. The truck, operated by the defendant, maintained a distance of only a few inches from the rear of Bonante's vehicle for a distance of about one mile. After Schmidt, traveling in the center lane, passed the defendant's truck, the defendant moved from behind Bonante's vehicle into the center lane. Bonante decelerated her vehicle, affording Schmidt an opportunity to get out of the defendant's lane. As Schmidt moved from the center lane to the right lane, the defendant accelerated his tractor trailer, striking the left rear portion of her vehicle.

The impact caused Schmidt's vehicle to career across the right lane, enter a grassy area and collide with a tree. Arianna was ejected from the vehicle as it collided with the tree. Arianna died from her injuries approximately six weeks after the accident.

After the accident, the defendant pulled his tractor trailer to the left lane, stopped and walked back to the scene of the accident. Shortly thereafter, he returned to his truck and drove away without speaking to anyone at the scene. Some ten months later, the state police determined that the defendant was operating the truck at the time of the accident. On February 23, 1997, the

state police arrested the defendant who, after initially indicating that he possessed a poor recollection concerning the events surrounding the accident, admitted that he must have been the truck's operator. Id., 303–305.

At trial, the defendant did not raise the issue that the court improperly omitted the "no unfavorable inferences" instruction from its charge to the jury. On appeal, however, he concedes that his trial counsel specifically requested that the court take the action he now challenges. He nevertheless argues that the court committed plain error, which warrants the reversal of the judgment of conviction. Our Supreme Court has observed in several opinions that " 'plain error is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992).' . . . *State* v. *Cassidy*, 236 Conn. 112, 144, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled on other grounds, *State* v. *Alexander*, 254 Conn. 290, 755 A.2d 868 (2000). Although, on rare occasions, we have granted plain error review for claims of improper jury instructions . . . we have done so only when the instruction in question either failed to include language from a mandatory charging statute, or when the instruction was so patently improper that to allow it to stand uncorrected would work a manifest injustice." (Citations omitted.) *State* v. *Kelly*, 256 Conn. 23, 58 n.18, 770 A.2d 908 (2001); see also Practice Book § 60-5.[6]

The United States Supreme Court, in *Carter* v. *Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

(1981), discussed the fundamental importance of a "no adverse inference" instruction and its relation to the constitutional privilege against self-incrimination embodied in the fifth amendment to the United States constitution. The Supreme Court noted that "[t]he principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a 'no adverse-inference' jury instruction when requested by a defendant to do so." Id., 300.

The Supreme Court underscored the significance of such an instruction in light of the tendency of jurors to view a criminal defendant's fifth amendment privilege "as a shelter for wrongdoers . . . [and jurors who] too readily assume that those who invoke it are . . . guilty of crime . . . ." (Internal quotation marks omitted.) Id., 302. The court stated that "[a] trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum." Id., 303.

"The provisions of § 54-84 (b) are more stringent than the federal or state constitutions require. . . . While the constitutional right to a no adverse inference charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given. . . . Our legislature has prescribed the language provided in § 54-84 (b) to be the jury instruction that must be given to reduce speculation to a minimum." (Citations omitted; internal quota-

tion marks omitted.) *State* v. *Thurman*, 10 Conn. App. 302, 309, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

Our Supreme Court has noted that the legislature, in enacting § 54-84, established a new statutory procedure to protect the rights of those accused persons who choose not to testify. "Where the legislature has chosen specific means to effectuate a fundamental right, failure to follow the mandatory provisions of the statute is plain error . . . ." *State* v. *Burke*, 182 Conn. 330, 331–32, 438 A.2d 93 (1980). Moreover, our Supreme Court has "regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires." *State* v. *Sinclair*, 197 Conn. 574, 583, 500 A.2d 539 (1985).

Although our state's appellate courts have, on several occasions, reviewed unpreserved claims of instructional error concerning § 54-84 (b), we have not had occasion to consider the issue presented by the circumstances of the present case.

General Statutes § 54-84 (b) provides in relevant part that "[u]nless *the accused* requests otherwise," the court shall provide the jury with a "no unfavorable inferences" instruction in its charge. (Emphasis added.) General Statutes § 54-84 (b). The issue before us is whether the statute requires, as the defendant argues, that the court inquire expressly of the defendant whether he or she wants the court to omit that instruction from its charge or whether, as the state argues, the defendant's attorney could waive that protection on the defendant's behalf. We agree with the state.

We begin our analysis by examining the language of § 54-84 (b). As in any exercise of statutory interpretation, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Marrocco* v. *Giar-*

*dino*, 255 Conn. 617, 624, 767 A.2d 720 (2001). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment . . . ." (Internal quotation marks omitted.) *Animal Rights Front* v. *Rocque*, 63 Conn. App. 207, 211, 772 A.2d 769, cert. denied, 256 Conn. 936, 776 A.2d 1149 (2001). Furthermore, "statutory language should be given its plain and ordinary meaning." (Internal quotation marks omitted.) *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 122, 735 A.2d 782 (1999). We refrain from reading into statutes provisions that are not clearly stated and interpret statutory intent by "referring to what the legislative text contains, not by what it might have contained." (Internal quotation marks omitted.) *Winchester* v. *Northwest Associates*, 255 Conn. 379, 388, 767 A.2d 687 (2001).

Our review of the legislative history of § 54-84 (b) reveals that the legislature merely sought to make the instruction mandatory, absent a request to the contrary. We do not find in the legislative history support for the defendant's position that a court need inquire of the accused directly after it receives a request from his or her attorney to omit the instruction.[7] Black's Law Dictionary (6th Ed. 1990) defines "accused" as "[t]he generic name for the defendant in a criminal case. . . ." In ascertaining the customary use of the word, we will not ignore the important fact that once counsel undertakes representation of an accused, he or she acts on the accused's behalf within the scope of his or her representation. Absent some indication to the contrary,

---

[7] During discussion in our Senate of the legislation that later was codified as General Statutes § 54-84 (b), the legislation's sponsor remarked that the section "merely makes the Court mandatorily give a charge to the jury . . . unless the defendant makes a motion to the Court asking the Court not to make such a charge to the jury in which case, if such motion is made, it is mandatory upon the Court not to make that charge." 20 S. Proc., Pt. 5, 1977 Sess., p. 2068, remarks of Senator Salvatore C. DePiano.

a court is entitled to rely on counsel's representations on behalf of his or her client.[8]

We find persuasive our Supreme Court's reasoning in *State* v. *Santiago*, 245 Conn. 301, 715 A.2d 1 (1998). The issue before the court in that case was whether the trial court improperly deprived the defendant of his constitutional right to a probable cause hearing because it permitted his attorney, without the defendant's consent or knowledge, to request a postponement of the hearing beyond the statutorily prescribed period of sixty days. Id., 313. General Statutes § 54-46a (b) provides in relevant part: "Unless waived by *the accused person* or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Santiago*, supra, 313. Our Supreme Court rejected the defendant's claim that the defendant himself must have made the waiver and that his attorney could not have made it on his behalf. Id., 313–14.

The Supreme Court reasoned that a personal, express waiver of the defendant's statutory protection was not required; such waiver may be implied by the actions of the attorney acting on his behalf. The legislature's use of the word "accused" in § 54-46a (b) did not require that the trial court inquire of the accused directly concerning his waiver of the statutory right. Further, the Supreme Court noted that waiver of the statutory right "certainly can be found from a specific request by counsel for a postponement." Id., 315. While the court recog-

---

[8] Additionally, our Supreme Court has noted the "[t]he general rule is that relevant and material admissions of fact by an attorney are admissible against the client, if made incidental to the attorney's general authority to represent the client in connection with and for the purpose of controlling the matter committed to the attorney." (Internal quotation marks omitted.) *State* v. *Simms*, 211 Conn. 1, 5 n.1, 557 A.2d 914, cert. denied, 493 U.S. 843, 110 S. Ct. 133, 107 L. Ed. 2d 93 (1989).

nized that "[i]n some circumstances, a waiver of rights must be knowing, voluntary and intelligent, and it must be expressly made. . . . In other circumstances, waiver can be implied . . . [and] [t]he waiver can be made by counsel . . . ." (Internal quotation marks omitted.) Id., 315–16.[9] The defendant did not have a constitutional right to be canvassed personally as to his waiver of the jury instruction at issue in the present case.[10]

Although we rely on our Supreme Court's prior interpretation of "accused," we also find considerable sup-

---

[9] "Waiver is the 'intentional relinquishment or abandonment of a known right or privilege.' *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 569, 668 A.2d 367 (1995). 'In general, federal and state constitutional and statutory rights can be waived.' " *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 237 Conn. 378, 385, 677 A.2d 1350 (1996). Waiver can occur in different ways depending on the right or privilege being waived. See, e.g., *State* v. *Patterson*, 230 Conn. 385, 390, 645 A.2d 535 (1994) (holding that criminal defendant implicitly waived right to have trial judge present during voir dire by acquiescing when judge left courtroom and by asking judge to return only when judicial determinations needed), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996); *State* v. *Simino*, 200 Conn. 113, 125–33, 509 A.2d 1039 (1986) (holding that criminal defendant waived right to be present in court during jury charge by voluntarily failing to attend trial); *State* v. *Shockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982) (trial court required to conduct inquiry of criminal defendant to ascertain whether waiver of right to jury trial knowingly, intelligently made); *State* v. *Taylor*, 63 Conn. App. 386, 402, 776 A.2d 1154 (discussing Practice Book § 44-3 and its requirements concerning court's necessary inquiry as to whether criminal defendant has made knowing, voluntary, intelligent waiver of right to be represented by counsel), cert. denied, 257 Conn. 907, 777 A.2d 687 (2001); *State* v. *Lugo*, 61 Conn. App. 855, 861–62, 767 A.2d 1250 (discussing Practice Book § 39-19 requirements for acceptance of guilty plea and waiver of constitutional rights inherent in guilty plea), cert. denied, 255 Conn. 955, 772 A.2d 153 (2001); *State* v. *Joyce*, 45 Conn. App. 390, 407, 696 A.2d 993 (1997) (holding that where counsel for criminal defendant had consented to judge's absence during voir dire, defendant waived right to judge's presence), appeal dismissed, 248 Conn. 669, 728 A.2d 1096 (1999).

[10] Although a criminal defendant's right to testify on his own behalf is constitutionally protected, our Supreme Court has held that a trial court is not under a duty to canvass a defendant concerning his waiver of that right. *State* v. *Paradise*, 213 Conn. 388, 405, 567 A.2d 1221 (1990). Certainly, we

port for our interpretation of the word from well settled principles in our law. We can discern no support, and the defendant fails to bring any to our attention, for the defendant's assertion that the court was required to conduct this type of inquiry, or ask him directly, concerning the jury instruction at issue in this case after his counsel had requested that the court omit the instruction. To the contrary, our law recognizes a distinction between matters that are within the province of a criminal defendant and those that are within the province of his or her counsel.

"It is . . . recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 199 Conn. 88, 95, 506 A.2d 86 (1986); see also *State* v. *Morico*, 14 Conn. App. 140, 144–45, 539 A.2d 1033, cert. denied, 208 Conn. 812, 546 A.2d 281 (1988). However, "[o]nce counsel is appointed, the day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate—and ultimate—responsibility of deciding if and when to object, which witnesses, if any to call, and what defenses to develop. Not only do these decisions rest with the attorney, but such decisions must, as a practical matter, be made without consulting the client." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 95, citing *Wainwright* v. *Sykes*, 433 U.S. 72, 93, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); see also rule 1.2 (a) of the Rules of Professional Conduct.[11]

can discern no higher duty imposed on a court concerning a defendant's waiver of a jury instruction concerning his or her decision not to testify.

[11] Rule 1.2 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. . . . In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

In *Davis*, a defendant, who was represented at trial by counsel, argued that our state constitution conferred on him the ultimate decision-making right to call witnesses on his behalf. In rejecting his claim, our Supreme Court reasoned that such a decision is commonly regarded as tactical or strategic in nature. *State* v. *Davis*, supra, 199 Conn. 96. The court's analysis of that issue is illuminating because it underscores the principle that "decisions concerning matters of trial strategy and tactics rest with the lawyer, as opposed to decisions concerning . . . inherently personal rights of fundamental importance to the defendant . . . ." Id., 95; see also *State* v. *Hedman*, 62 Conn. App. 403, 772 A.2d 603, (discussing fundamental posttrial right of defendant to allocution prior to imposition of sentence), cert. granted on other grounds, 256 Conn. 909, 772 A.2d 602 (2001). It is well established that " '[w]e may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused.' *Cuyler* v. *Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)." *State* v. *Davis*, supra, 100.

We conclude that decisions concerning the composition of a jury charge fall into the category of decisions concerning matters of trial strategy. Although the right not to testify is personal to the accused, the decision as to whether a court should include an instruction, pursuant to § 54-84 (b), regarding an accused's decision not to testify is a matter of trial strategy. There is little uncertainty about the fact that the defendant's counsel made a strategic and tactical decision concerning the instruction at issue in the present case. Counsel "persisted" in asking the court to omit the instruction from its charge. The court reminded counsel of the statute and of the fact that the instruction was already a part of its base charge. Counsel, nonetheless, did not want to "highlight" the defendant's failure to take the witness stand. See footnote 4. Although it would not change

our analysis, the defendant does not assert in his brief to this court that he disagreed with counsel's decision or that counsel did not follow his wishes concerning the issue.

The defendant relies on our Supreme Court's decision in *State* v. *Burke*, supra, 182 Conn. 330. In *Burke*, the court found plain error where a trial court failed to include the instruction set forth in § 54-84 (b) despite the fact that defendant's counsel failed to except to the court's omission of the instruction at the close of the charge. *Burke* required courts to follow the plain language of the statute, but it did *"suggest* that prior to delivering the charge to the jury, the trial court, in the absence of the jury, inquire of the defendant and of counsel if they would like the court to instruct the jury that jurors may not draw unfavorable inferences from the defendant's failure to testify." (Emphasis added.) Id., 334. The present case is distinguishable from *Burke*. Here, the defendant's counsel, certainly purporting to act on the defendant's behalf, specifically told the court, on two separate occasions, that he wanted the court *to omit the instruction from its charge.* Where, as in *Burke*, it would be better practice as a means of complying with the statute for the court to conduct such an inquiry, or to state in open court on the record that the defendant, through his counsel, had requested the omission, the court did not need to do so here.

Likewise, the defendant's reliance on *State* v. *Sinclair*, supra, 197 Conn. 574, and *State* v. *Carter*, 182 Conn. 580, 438 A.2d 778 (1980), is of no avail. In those cases, as in *Burke*, the court omitted the instruction from its charge, and the defendant failed to except to the omission at trial. The failure to give the instruction, in the absence of a request to the contrary, is plain error. The present case presents a different issue.

We hold, therefore, that the court did not improperly fail to inquire expressly of the accused, after his counsel

requested that the court omit the instruction, whether he also wanted the court to omit the instruction from its charge. General Statutes § 54-84 (b) does not so require, and it was well within the province of the defendant's trial counsel to make the tactical and strategic decision to request that the court omit the instruction from its charge. As we have stated, plain error review is "reserved for truly extraordinary situations" in which an error is so obvious that it affects the integrity of the proceeding. (Internal quotation marks omitted.) *State* v. *Cosby*, 44 Conn. App. 26, 39, 687 A.2d 895 (1996), cert. denied, 240 Conn. 910, 689 A.2d 474 (1997). The present case does not implicate such concerns.

The judgment is affirmed.

In this opinion the other judges concurred.