## STATE OF CONNECTICUT *v.* CLARENCE AUSTIN
### (AC 21815)

Schaller, Bishop and Dupont, Js.

Argued October 29, 2002—officially released February 4, 2003

*Glenn M. Conway*, with whom, on the brief, were *Tara L. Knight, E. Gregory Cerritelli* and *David Garner*, legal intern, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Melanie L. Cradle*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Clarence Austin, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b) and possession of a narcotic substance with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b).[1] On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress evidence and (2) ruled that his sequestration motion, which was granted at the suppression hearing, did not extend to the trial proceedings.

The jury reasonably could have found the following facts. On January 4, 2000, while Officer Louis Cavalier and Officer Douglas Harkins of the New Haven police department were conducting surveillance of the area of Chapel, Dwight and Kensington Streets in New Haven, they observed a male approach the defendant. After a short conversation, the male handed the defendant money, which the defendant placed in his pocket, in exchange for cocaine, which the defendant retrieved by reaching down his front waistband. Subsequently, a second male approached the defendant. The two conversed. Then, after receiving an amount of money and placing it in his pocket, the defendant gave the male an amount of cocaine. The defendant then proceeded along Kensington Street and entered the Dusk Market convenience store (Dusk Market).

Cavalier and Harkins then radioed Officers Anthony Maio and Vincent Anastasio with a description and loca-

---

[1] Initially, the defendant was charged in two separate informations in connection with incidents occurring on January 4 and February 7, 2000. Prior to trial, the two case files were consolidated on the state's motion. The state proceeded at trial on the two informations. The defendant, however, was convicted of the charges related only to the January 4, 2000 incident, and, therefore, only those charges are relevant to this appeal.

tion of the defendant. On the basis of information from Harkins that the defendant had engaged in a drug transaction, Maio and Anastasio proceeded to Dusk Market, conducted a search of the defendant and then arrested him.[2] Additional facts will be set forth as necessary.

## I

## MOTION TO SUPPRESS

Prior to trial, the court conducted a hearing on the defendant's motion to suppress the evidence seized from him following the search by Maio inside Dusk Market on January 4, 2000.[3] In addition to those facts stated previously, the court found the following facts in its memorandum of decision. Maio and Anastasio entered Dusk Market and approached the defendant. Maio conducted an interview, which led him to believe the defendant was concealing contraband. He conducted a patdown search that revealed, in the defendant's pant leg, a concealed item, which was soft and bulgy to the touch. Maio asked the defendant if he was concealing any contraband, to which the defendant responded that if he was, the officer would have to find it. Maio raised the defendant's right pant leg. A bag containing a white substance fell to the floor.

Subsequently, Maio unrolled the defendant's pant leg within which was a ziplock bag containing smaller ziplock bags. A field test later revealed that the smaller bags contained crack cocaine. Maio then proceeded to conduct a full search of the defendant. In the course of the search, he found a ziplock packet containing smaller empty, yellow tinted ziplock packets, $112 in

---

[2] The facts of the search are discussed in part I.

[3] The hearing also addressed evidence seized in connection with the charges that were filed against the defendant in connection with a separate incident that occurred on February 7, 2000. Because the defendant was found not guilty on those charges, we omit facts relevant to that incident. See footnote 1.

United States currency and a razor blade. The defendant then was arrested.

On the basis of those facts, the court concluded that the officers had conducted a valid search and seizure under *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and further, that there was probable cause to arrest the defendant. The court concluded that the probable cause validated the contemporaneous search and seizure as incident to a lawful arrest. The court, therefore, denied the defendant's motion to suppress. The defendant claims that the denial was improper and that all of the seized items should have been suppressed because the warrantless search was unreasonable under the fourth amendment to the United States constitution[4] and article first, § 7, of the constitution of Connecticut.[5] He argues that the search was not valid under *Terry* or any other recognized exception to the warrant requirement. The state argues that the search was a valid search incident to lawful arrest, and, in the alternative, that it was valid under *Terry*. We agree that the search was valid as incident to a lawful arrest based on probable cause, and, therefore, it is unnecessary to consider whether the search was valid under *Terry*.

Subject to only a few well recognized exceptions, a search without a warrant issued on probable cause is per se unreasonable. *State* v. *Clark*, 255 Conn. 268, 291, 764 A.2d 1251 (2001); *State* v. *Trine*, 236 Conn. 216, 235, 673 A.2d 1098 (1996). A search incident to a lawful

[4] The fourth amendment to the United States constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

[5] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

custodial arrest, however, is an exception to the warrant requirement. *New York* v. *Belton*, 453 U.S. 454, 457–58, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *State* v. *Clark*, supra, 291; *State* v. *Trine*, supra, 235. "When an arrest is made, it is reasonable for a police officer to search for, and seize . . . evidence within the immediate control of the arrested person in order to . . . prevent the destruction or concealment of evidence." *State* v. *Clark*, supra, 292.

In reviewing whether the court properly concluded that the search and seizure was valid under the exception to the warrant requirement for a search incident to a lawful arrest, it is first necessary to evaluate the validity of the arrest. General Statutes § 54-1f (b) authorizes a police officer to make a warrantless arrest based on probable cause.[6] Under the federal and Connecticut constitutions, the court uses a totality of the circumstances test in determining whether probable cause existed. See *Illinois* v. *Gates*, 462 U.S. 213, 231–32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State* v. *Velasco*, 248 Conn. 183, 190–91, 728 A.2d 493 (1999).

"Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe a felony has been committed." (Internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 292; *State* v. *Trine*, supra, 236 Conn. 236–37. In evaluating probable cause for a warrantless search, the court may "consider *all* of the legally obtained facts available to a police officer, and *all* of the reasonable

---

[6] General Statutes § 54-1f (b) provides in relevant part: "Members . . . of any local police department . . . shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony." "Reasonable grounds to believe" is synonymous with the term probable cause. *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999).

inferences that might be drawn therefrom in light of the officer's training and experience." (Emphasis in original.) *State* v. *Trine*, supra, 230–31.

"In reviewing a trial court's determination that probable cause to arrest existed, we consider whether [it is] legally and logically correct and whether [it] find[s] support in the facts set out in the memorandum of decision . . . . Because a trial court's determination of the existence of probable cause implicates a constitutional claim, we must review the record carefully to ensure that its determination [is] supported by substantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 293–94.

We conclude that prior to their entry into the market, Maio and Anastasio had probable cause to arrest the defendant on the basis of information provided to them by Harkins and Cavalier. As the court found, Harkins and Cavalier, while conducting surveillance of a known high crime area, observed the defendant engage in two drug transactions. In each transaction, the defendant had been waiting on the street when an unknown individual approached and engaged him in a brief conversation. The defendant then received money from the individual and put it in his pocket. Next, the defendant reached into his pants and retrieved a bag containing smaller bags of a white substance, which he handed to the individual. Those facts would lead a reasonable police officer to believe that the defendant had committed a felony. Therefore, Harkins and Cavalier radioed Maio and Anastasio to arrest the defendant in connection with suspected drug transactions.[7] We conclude

---

[7] Even though Maio and Anastasio did not personally observe the transactions, the probable cause that Harkins and Cavalier had was attributable to Maio and Anastasio as well. See *State* v. *Hedge*, 59 Conn. App. 272, 279, 756 A.2d 319 (2000) (evidence in possession of officers sufficient to constitute probable cause to arrest).

that the warrantless arrest based on probable cause was authorized under § 54-1f (b).

Having concluded that the officers had probable cause to arrest the defendant within the market, we next consider whether the search and seizure prior to the defendant's actual arrest was valid as a search incident to a lawful arrest. Both the United States Supreme Court and our Supreme Court have held that "[e]ven if a search and seizure chronologically precede a formal arrest, the search and seizure may be constitutionally valid as long as the arrest and the search and seizure are substantially contemporaneous and are integral parts of the same incident." *State* v. *Trine*, supra, 236 Conn. 236; see also *Rawlings* v. *Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *State* v. *Clark*, supra, 255 Conn. 294 n.41. Here, the facts allow the conclusion that the search and seizure were substantially contemporaneous with the arrest.

We conclude, therefore, that the search of the defendant's pant leg and pockets, and the seizure of all the items discovered were valid as incident to his lawful arrest. The court properly denied the defendant's motion to suppress.

## II

## SEQUESTRATION ORDER

Prior to trial, the court held an evidentiary hearing on the defendant's motion to suppress.[8] Immediately

---

[8] The hearing was conducted over three days. The proceeding on the last day was a supplemental hearing on the motion to suppress involving the production of Cavalier's field notes and examination regarding the same. On that day, while counsel and the court were discussing an issue regarding the accuracy of the transcript of Maio's testimony from the preceding day, the state brought to the attention of defense counsel and the court that Cavalier was present in the courtroom. The state asked whether the presence was a violation of the sequestration order. Neither the court nor defense counsel believed it was a violation. Thus, the defendant has waived any argument that it might have been a violation of the order. Further, neither in his brief nor at oral argument has the defendant argued that Cavalier's

preceding the introduction of the state's evidence, defense counsel orally requested a sequestration order. The court granted the motion. There was only a brief exchange regarding that motion:

"[Defense Counsel]: I request a sequestration order. I formally make that request.

"The Court: So ordered."

The only other reference to the sequestration order during the hearing occurred prior to the lunch break on the first day of the hearing. At that time, the court asked the state to "remind [Cavalier] of the sequestration order [and] not to discuss [his] testimony with anyone."

In a memorandum of decision, the court denied the defendant's motion to suppress. At trial, during the state's case-in-chief, while cross-examining Cavalier, defense counsel elicited testimony that Cavalier had discussed the case with Harkins, Maio and Anastasio to get their stories straight.[9] During a recess, defense counsel raised the issue of whether that discussion of their testimony demonstrated a violation of the sequestration order.

Following arguments by counsel, the court concluded that on the basis of disjunctive language of General Statutes § 54-85a and Practice Book § 42-36, the sequestration order granted at the suppression hearing was not in effect for the trial proceedings.[10] Further, the

---

presence was a violation of the order. Therefore, we do not consider that occurrence for the purposes of our discussion.

[9] During the subsequent testimony of Harkins, he admitted having spoken with Cavalier about the case, but not about his testimony. He denied having spoken with Maio and Anastasio. Maio testified that he had not spoken with any officers about the case or his testimony. Anastasio testified that he had not spoken with the other officers about his testimony.

[10] General Statutes § 54-85a and Practice Book § 42-36 are virtually the same. General Statutes § 54-85a provides: "In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue *or* motion *or* any part of

court concluded that even if the sequestration order was in effect, the violation did not prejudice the defendant.

The defendant claims that due to the virtually identical issues at the suppression hearing and at trial, the sequestration order granted at the hearing remained in effect for the trial. He argues that the court's ruling values form over substance. He argues that because the court did not place any limitation on the order, there is a presumption that in requesting the order at the beginning of the hearing, counsel sought to cover the entire trial process. He further contends that in delineating the scope of the order, courts, adhering to the purposes of a sequestration order, should err on the side of protecting the defendant's rights.

A

A review of the defendant's claim requires us to examine the scope of a sequestration order granted pursuant to Practice Book § 42-36 and General Statutes § 54-85a on the facts of this case. In evaluating the propriety of the court's actions, we note that a "court must take full account of the significant objectives advanced by sequestration in discerning the proper scope of a sequestration order." *State* v. *Nguyen*, 253 Conn. 639, 650, 756 A.2d 833 (2000). "The right to have witnesses sequestered is an important right that facilitates the truth-seeking and fact-finding functions of a trial. . . . Sequestration serves a broad purpose. It is a procedural device that serves to prevent witnesses from tailoring their testimony to that of earlier witnesses; it aids in detecting testimony that is less than candid and assures that witnesses testify on the basis of their own knowl-

the trial of such prosecution in which he is not testifying." (Emphasis added.)

Practice Book § 42-36 provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue *or* motion *or* during any part of the trial in which such witness is not testifying." (Emphasis added.)

edge." (Citations omitted; internal quotation marks omitted.) Id., 649.

In *Nguyen,* our Supreme Court broadly interpreted the scope of the statute and the rule of practice. In that case, after the trial court had granted a sequestration order,[11] the state overheard defense counsel discussing a prior witness' testimony in the presence of a prospective witness. Id., 643. The defendant argued that the discussion did not violate the sequestration order because that order barred witnesses only from being in the courtroom prior to testifying. The court held, however, that "[a]lthough the language of [Practice Book § 42-36] may seem merely to bar a sequestered witness from being in the courtroom when he is not testifying . . . we do not follow so rigid an interpretation. Indeed, such an interpretation would vitiate any sequestration order by exalting form over substance." (Internal quotation marks omitted.) *State* v. *Nguyen,* supra, 253 Conn. 651.

In the present case, the state argues, as the defendant did in *Nguyen,* for a strict and literal interpretation of the statute and the rule of practice. The state bases its argument on the use of the word "or" in Practice Book § 42-36 and in General Statutes § 54-85a. In accordance with that argument, the trial court in the present case held that the sequestration order requested at the suppression hearing, because it was not otherwise modified, was in effect only for the duration of that hearing. In light of the holding of *Nguyen* and the purposes of a sequestration order, we do not agree.

We acknowledge, as the state argues, that Practice Book § 42-36 and General Statutes § 54-85a are written in the disjunctive. Contrary to the state's argument, however, a reading of the statute in light of the purposes

[11] In *Nguyen,* as in the present case, the court granted the sequestration order without any elaboration as to its scope. *State* v. *Nguyen,* supra, 253 Conn. 650.

of a sequestration order, leads us to the conclusion that the disjunctive language merely separates the types of proceedings at which a party may make a motion to sequester witnesses. The disjunctive language does not delineate or affect the scope of the order. If we were to read the statute as the state requests and therefore require the party seeking a sequestration order to renew its request at each juncture of a case, we would be " 'exalting form above substance.' " *State* v. *Nguyen*, supra, 253 Conn. 651. Thus, in adhering to the purposes of the sequestration of witnesses and the holding in *Nguyen*, we conclude that the defendant's request for a sequestration order prior to the hearing on his motion to suppress remained in effect through the end of the trial. The officers' discussion of their testimony was, therefore, a violation of the order.[12]

## B

Having concluded that the sequestration order was violated, it is next necessary to consider whether the defendant was prejudiced. The defendant argues that due to the similarities of the issues at the suppression hearing and at trial, he was prejudiced and that a new trial should be granted to protect his right to a fair trial. The state argues that the defendant has not shown any prejudice.

"A violation of a sequestration order does not automatically require a new trial. . . . The controlling consideration is whether the defendant has been prejudiced by the violation. . . . The burden rests on the party requesting the sequestration to show that the violation

---

[12] The court found that the violation was that of "the officers conversing about the case outside the presence of the court." When the court ruled, however, the only testimony that the court had heard was that of Cavalier stating that he had discussed the case with the other officers to get their stories straight. The ruling of the court, impliedly, therefore, did not extend to a general discussion of the case, but to the discussion of the officers' testimony.

was prejudicial. . . . If the prejudice resulting from the violation is likely to have affected the jury's verdict, a new trial must be ordered." (Citations omitted.) *State v. Robinson*, 230 Conn. 591, 599, 646 A.2d 118 (1994); *State v. Morgan*, 70 Conn. App. 255, 277–78, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

In this case, the violation occurred when the four officers involved had a discussion after testifying at the suppression hearing, but prior to testifying at trial. "Not all testimony that is tainted by a violation of a sequestration order [however] is necessarily prejudicial. Rather, [a]n inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted." (Internal quotation marks omitted.) *State v. Robinson*, supra, 230 Conn. 600. First, we must determine whether the testimony of the officers at trial was tailored to what was discussed in violation of the sequestration order. Second, if the testimony was tailored, we must determine whether that testimony is likely to have affected the jury's verdict. Id., 601.

Whether the officers tailored their testimony can be evaluated by comparing the testimony given by each officer at the suppression hearing, prior to the violation of the order, to the testimony given by each officer at trial, subsequent to the violation of the order. A thorough examination of the record reveals that the officers' testimony at each proceeding was the same. Although the officers testified similarly, that was not due to the tailoring of each one's testimony to that of the other officers. The similarity in the officers' testimonies existed at the suppression hearing before the violation occurred. That similarity is fully explainable by the fact that the officers observed and were witnesses to the same events. See *State v. Scott*, 16 Conn. App. 172, 183, 547 A.2d 77 (similarities in testimony wholly explainable by reference to other factors), cert. denied, 209

Conn. 821, 551 A.2d 758 (1988); *State* v. *Sullivan*, 11 Conn. App. 80, 85, 525 A.2d 1353 (1987) (same).

Further, the defendant has not pointed out, either in his brief or at oral argument, any tailoring of the officers' testimony.[13] Indeed, during oral argument, the defendant conceded that the officers testified in the same way at the hearing on the motion to suppress and at trial. Additionally, the defendant had ample opportunity to, and did in fact, cross-examine the witnesses and argue to the jury regarding the officers having spoken with each other before testifying at trial.

Under the facts of this case, the defendant has not met his burden of showing prejudice as a result of the officers' discussion of their testimony and, hence, the purposes of the sequestration order were not thwarted.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] At oral argument, the defendant pointed out that there was some inconsistency in the testimony of Cavalier and Harkins regarding the location of Harkins in a separate February 7, 2000 incident in which the defendant also was charged. That is irrelevant, however, because the defendant was acquitted of those charges. See footnotes 1 and 3.